IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-14-0334 |
| | * | |
| TIMOTHY MCDERMOTT | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Timothy McDermott is a fifty-year-old federal prisoner serving a 132-month sentence for drug trafficking. Now pending is McDermott's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECFs 334, 355). McDermott seeks relief based on underlying health conditions making him particularly susceptible to serious illness related to COVID-19. The government opposes the motion. (ECF 337).[1] For the reasons explained below, the motion will be granted, and McDermott's sentence will be reduced to time served, followed by a five-year term of supervised release.

## BACKGROUND

In June 2016, McDermott pled guilty to one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. (ECF 279, Plea Agreement at 1). McDermott admitted that at least from September 2013 to June 30, 2014, he was a member of and courier for a drug trafficking organization that purchased heroin from Chicago, Illinois and resold it in Baltimore, Maryland. (*Id.* at 7). During the period of the conspiracy, he and other members of the operation conspired to distribute thirty kilograms or more of heroin. (*Id.* at 9). The

---

[1] Through counsel, McDermott recently filed a supplement to his motion, (ECF 355), regarding conditions at FCI Fort Dix and his current health conditions, which the court considers. The government did not respond to this supplement,

1

court accepted McDermott's Fed. R. Crim. Proc. 11(c)(1)(C) guilty plea and sentenced him to 132 months imprisonment, followed by five years of supervised release. (ECF 320, Judgment).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

McDermott submitted a request for compassionate release to the warden of FCI Fort Dix, where he is currently incarcerated, on April 6, 2020, which was denied on June 22, 2020. (ECF 334 at 2). The government does not contest that McDermott has properly exhausted his administrative remedies. Thus, the only issues are (1) whether "extraordinary and compelling reasons" warrant the reduction of McDermott's sentence and (2) if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction.

## DISCUSSION

Under 28 U.S.C. § 994(t) the United States Sentencing Commission has the responsibility to define "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The most recent Sentencing Commission policy statement defining

2

"extraordinary and compelling reasons" for sentence reduction, Guideline § 1B1.13, predates the First Step Act and, as the Fourth Circuit recently held, is not a policy statement that applies to motions for compassionate release brought by defendants, because its plain text "constrains the entire policy statement to motions filed solely by the BOP, . . . and not by defendants themselves." *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020) (internal quotation marks and citation omitted). In the absence of an "applicable policy statement[] issued by the Sentencing Commission" concerning what may be an "extraordinary and compelling reason" for compassionate release when a defendant brings a motion under § 3582(c)(1)(A), "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

## I. McDermott's Medical Conditions are "Extraordinary and Compelling"

McDermott argues that his risk of developing serious illness related to COVID-19 due to his age and underlying medical conditions (chronic hepatitis C,[2] obesity, hepatosplenomegaly (enlarged spleen and liver), hypertension (high blood pressure), asthma, anemia, and symptoms of "Long COVID" including memory loss and brain fog) constitutes an "extraordinary and compelling reason" to reduce his sentence. The CDC's data collection shows that hypertension (and other heart conditions, potentially including bradycardia), chronic liver disease, and moderate-to-severe asthma "can make you more likely to get severely ill from COVID-19." *See COVID-19: People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021).[3] At the same time, the

---

[2] Hepatitis C "is a liver infection that may result in long-term, chronic infections affecting the liver." *United States v. Curry*, No. CR ELH-17-0387, 2021 WL 130000, at *8 (D. Md. Jan. 14, 2021) (citing *Viral Hepatitis: Hepatitis C Information*, CDC, https://www.cdc.gov/hepatitis/hcv/index.htm (last accessed Jan. 11, 2021)).

[3] Anemia is not listed as an underlying medical condition.

scientific evidence supporting that conclusion is, at this time, "mixed." *See COVID-19: Underlying Medical Conditions Associated with High Risk for Severe COVID-19: Information for Healthcare Providers*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated May 13, 2021). Obesity is listed by the CDC as an aggravating medical condition supported by systematic review. *Id.* The government acknowledges that McDermott's BMI of 32.7 renders him obese and thus at higher risk for developing serious illness related to COVID-19. (*see* ECF 337, Opp'n at 13-15). Despite this diagnosis, the government contends that McDermott could manage this condition within BOP custody, and it does not rise to an "extraordinary and compelling reason" for compassionate release. Lastly, while the CDC does not identify illness from a previous infection of COVID-19 as a qualifying underlying medical condition, McDermott's ongoing challenges from contracting a severe case of COVID-19 while incarcerated compounds his current risk due to his other conditions.

The court acknowledges that McDermott's obesity, and potentially his hepatosplenomegaly, asthma, hypertension, "long-COVID" symptoms, and chronic hepatitis C, individually and compounded, pose an elevated risk of severe illness from COVID-19. McDermott has thus met his burden of providing underlying conditions that constitute "extraordinary and compelling reasons" for compassionate release.

    **II.    The § 3553(a) Sentencing Factors Warrant Compassionate Release**

The court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable[.]" *See* 18 U.S.C. § 3582(c)(1)(A). The court accounts for McDermott's history and characteristics and also must ensure that the sentence imposed reflects the seriousness of the offense and provides for adequate deterrence. *See* § 18 U.S.C. §§ 3553(a)(1), 3553(a)(2)(A)–(B). As explained above, McDermott's conduct was serious, involving a large quantity of heroin. This was not McDermott's first offense: he has been convicted of theft, two other drug distribution offenses,

and using a handgun to commit assault with the intent to murder, later reduced to manslaughter. (ECF 309, Pre-Sentence Report at ¶¶ 33-38). The assault—the only violent crime on McDermott's record—however, occurred almost thirty years ago, in 1993. And while McDermott transported a substantial quantity of heroin, he was not involved in a leadership role within the conspiracy. While incarcerated, McDermott has produced a mixed, but overall positive, record. Though he has committed one disciplinary infraction over seven years, possession of drugs or alcohol in 2019, (ECF 337-3 at 1), McDermott also has demonstrated sustained efforts to engage in BOP programing and better himself. (ECFs 334-4, 334-5, 334-6).

McDermott already has served eighty-five months, or approximately seven years, totaling approximately two-thirds of his sentence. This time served adequately reflects the seriousness of the offense and has provided for adequate deterrence from future criminal conduct. Further, for the protection of the public, McDermott's sentence contemplates continued supervision for a period of five years. His sister, Dawn Warch, who apparently has been supportive of McDermott throughout his incarceration, asserts she will be able to maintain a supportive and intoxicant-free home environment for McDermott upon his release from BOP custody. (ECF 334-8). Accordingly, McDermott will be required to spend the first twelve months of his five years of supervised release on home confinement with his sister, leaving only for medical appointments or other activities preapproved by his Probation Officer.

Based on the above considerations, and in light of the principle that a sentence should be "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a), the court finds that the § 3553(a) factors weigh in favor of reducing McDermott's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). This, combined with the "extraordinary and compelling" risk to McDermott of severe illness from COVID-19 should he remain in prison, leads the court to conclude that McDermott is entitled to compassionate release.

## CONCLUSION

For the foregoing reasons, McDermott's motion for compassionate release (ECFs 334, 355) will be granted. The associated motion to seal (ECF 336) will be granted to protect the confidentiality of personal information.

The terms and conditions of supervised release to which McDermott was sentenced will remain in place, with the additional condition that McDermott will spend the first twelve months of supervised release on home confinement, to be monitored by U.S. Probation, using location monitoring technology at the discretion of the Probation Officer. For the twelve-month home confinement period, McDermott shall not leave the address approved by U.S. Probation except for activities approved in advance by U.S. Probation. In addition, he will be required to comply with all directives of federal, state, and local governments related to public health issues, including COVID-19.

A separate Order follows, which will be stayed for up to seven days to make appropriate travel arrangements and to ensure McDermott's safe release, including by placing McDermott in quarantine for a period of seven days if needed and to evaluate him for the purposes of receiving a medical clearance. If more than seven days are needed to make appropriate travel arrangements and ensure McDermott's safe release, the United States shall immediately notify the court and show cause why the stay should be extended. An amended Judgment and Commitment Order will be issued reflecting these changes.

| | |
|---|---|
| 10/14/21 | /s/ |
| Date | Catherine C. Blake |
| | United States District Judge |